No. 22-15209

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

DAVID SUSKI; JAIMEE MARTIN; JONAS CALSBEEK; THOMAS MAHER, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS,

PLAINTIFFS-APPELLEES,

V.

COINBASE, INC.,

DEFENDANT-APPELLANT.

AND

MARDEN-KANE, INC.,

DEFENDANT.

On Appeal from the United States District Court
for the Northern District of California
Hon. Sallie Kim
Case No. 21-cv-04539

### Appellant's Opening Brief

COOLEY LLP
MICHAEL G. RHODES (SBN 116127)
TRAVIS LEBLANC (SBN 251097)
KATHLEEN HARTNETT (SBN 314267)
JOSEPH D. MORNIN (SBN 307766)
DAVID S. LOUK (SBN 304654)
3 Embarcadero Center, 20th Floor
San Francisco, California 94111-4004
Telephone: +1 415 693 2000
Facsimile: +1 415 693 2222

Attorneys for Appellant Coinbase, Inc.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Ninth Circuit Rule 26.1, the undersigned certifies that appellant Coinbase, Inc. is a wholly owned subsidiary of Coinbase Global, Inc. No publicly held corporation owns more than 10% of the stock of either entity.

Dated: May 11, 2022

*/s/ Michael G. Rhodes*
Michael G. Rhodes

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT .........................................................4

STATEMENT OF ISSUES .....................................................................4

BACKGROUND.....................................................................................5

I.    Factual Background...................................................................5

    A.    Plaintiffs, Like All Users of Coinbase, Agreed to Coinbase's User Agreement and Thus to Binding Arbitration...................................................................5

    B.    Coinbase's Dogecoin Sweepstakes..........................................7

II.    Procedural Background.................................................................9

STANDARD OF REVIEW ...................................................................12

SUMMARY OF THE ARGUMENT ....................................................12

ARGUMENT .......................................................................................14

I.    Arbitration Should Be Compelled Because the Coinbase User Agreement Requires Arbitration And Delegates Arbitrability To The Arbitrator........................................................................14

    A.    Plaintiffs Do Not Dispute That The User Agreement Contains A Valid Arbitration Agreement. ............................15

    B.    The User Agreement "Clearly and Unmistakably" Delegates Questions of Arbitrability to the Arbitrator..........15

    C.    The Forum Selection Clause In The Official Rules Does Not Disturb The User Agreement's "Clear And Unmistakable" Delegation Of Scope Disputes To An Arbitrator..............................................................................16

    D.    Under The Delegation Clause, The Arbitrator Must Determine Whether Plaintiffs' Claims Are Within The Scope of the Parties' Arbitration Agreement.........................20

# TABLE OF CONTENTS
## (continued)

**Page**

II.  Even If The District Court Had Authority To Decide Arbitrability, Arbitration Should Be Compelled Because This Dispute Is Within The Scope Of The Parties' Arbitration Agreement ................................................................................22

  A.  The User Agreement Is Fully Integrated And The Official Rules Did Not Trigger The User Agreement's Amendment Provision. ...........................................................23

  B.  Even If The Official Rules Amended The User Agreement, The Agreements Can And Should Be Read Harmoniously, Requiring Arbitration Of Claims By Coinbase Users Like Plaintiffs. ..............................................30

    1.  Forum Selection Clauses Like That In The Official Rules Are Not Inconsistent With Arbitration Provisions Because They Apply Only To Non-Arbitrable Claims. ........................................................31

    2.  The User Agreement and the Official Rules Can Be Read Harmoniously. ............................................33

CONCLUSION ................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aceves v. Autonation, Inc.*,
  317 F. App'x 665 (9th Cir. 2009)....................................................20

*Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*,
  645 F.3d 522 (2d Cir. 2011)...................................................... 28, 29

*Bank Julius Baer & Co. v. Waxfield Ltd.*,
  424 F.3d 278 (2d Cir. 2005)........................................................32

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015)......................................................14

*Capili v. Finish Line, Inc.*,
  116 F. Supp. 3d 1000 (N.D. Cal. 2015) ...................................... 26, 29

*Davis v. Einstein Noah Rest. Grp., Inc.*,
  No. 19-cv-00771-JSW, 2019 WL 6835717 (N.D. Cal. Oct. 23,
  2019).......................................................................... 18, 20

*Dillion v. BET Info. Sys., Inc.*,
  No. 18-cv-04717-JST, 2019 WL 12338059 (N.D. Cal. Feb. 19,
  2019)..............................................................................18

*Dream Theater, Inc. v. Dream Theater*,
  124 Cal. App. 4th 547 (2004)................................................ 17, 34

*First Options of Chi., Inc. v. Kaplan*,
  514 U.S. 938 (1995)...............................................................16

*Garcia v. ISS Facility Servs., Inc.*,
  855 F. App'x 338 (9th Cir. 2021)...................................................24

*Gen. Precision, Inc. v. Int'l Ass'n of Machinists*,
  241 Cal. App. 2d 744 (1966).......................................................30

*Goldman, Sachs & Co. v. City of Reno*,
  747 F.3d 733 (9th Cir. 2014).................................................*passim*

# TABLE OF AUTHORITIES
## (continued)

**Page(s)**

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
    139 S. Ct. 524 (2019) ..................................................... 14, 15, 21

*Herkenrath v. Move, Inc.*,
    No. CV 18-4438-MWF, 2018 WL 10705782 (C.D. Cal. Aug. 21,
    2018) ................................................................................................ 32

*Ingram Micro Inc. v. Signeo Int'l, Ltd.*,
    No. SACV 13–1934–DOC, 2014 WL 3721197 (C.D. Cal. July 22,
    2014) ................................................................................................ 19

*Jacksen v. Chapman Scottsdale Autoplex*,
    LLC, No. CV-21-00087-PHX-DGC, 2021 WL 3410912 (D. Ariz.
    July 21, 2021) ................................................................................ 18

*Kanno v. Marwit Cap. Partners II, L.P.*,
    18 Cal. App. 5th 987 (2017) ...................................................... 25

*Masterson v. Sine*,
    68 Cal. 2d 222 (1968) ............................................................ 24, 29

*Mohamed v. Uber Techs., Inc.*,
    848 F.3d 1201 (9th Cir. 2016) ........................................... *passim*

*Momot v. Mastro*,
    652 F.3d 982 (9th Cir. 2011) ................................................. 14, 16

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
    460 U.S. 1 (1983) .......................................................................... 10

*Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*,
    819 F.2d 400 (3d Cir. 1987) ...................................................... 32

*Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*,
    139 F.3d 1061 (5th Cir. 1998) .................................................. 31

*Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*,
    297 F.3d 388 (5th Cir. 2002) ............................................... 31, 32

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Peterson v. Minidoka Cnty. Sch. Dist. No. 331*,
    118 F.3d 1351 (9th Cir. 1997), *amended*, 132 F.3d 1258 (9th Cir.
    1997)............................................................................................30

*Rent–A–Ctr., W., Inc. v. Jackson*,
    561 U.S. 63 (2010)......................................................................16

*Stiner v. Brookdale Senior Living, Inc.*,
    810 F. App'x 531 (9th Cir. 2020).................................................25

*Taylor v. Shutterfly, Inc.*,
    No. 18-cv-00266-BLF, 2018 WL 4334770 (N.D. Cal. Sept. 11,
    2018)............................................................................................18

*Vital Pharms., Inc. v. Orange Bang, Inc.*,
    No. CV 20-1464 DSF (SHK), 2020 WL 12676307 (C.D. Cal. Nov.
    30, 2020) ....................................................................................30

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996).......................................................24

**Statutes**

9 U.S.C.
    § 2................................................................................................14
    § 3..................................................................................................9
    §§ 16(a)(1)(A)-(B) ................................................................*passim*

Bus. & Prof. Code § 17200..............................................................10

Bus. & Prof. Code § 17539.15..........................................................10

Cal. Civ. Code § 1643.......................................................................30

Cal. Civ. Code § 1750.......................................................................10

Cal. Civ. Proc. Code § 1856(b)........................................................25

Cal. Penal Code § 320......................................................................11

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Federal Arbitration Act ...........................................................................4, 9, 10, 14

**Other Authorities**

17A C.J.S. Contracts § 574....................................................................................29

AAA Rule 14(a).................................................................................................6, 15

FINRA Rule 12203(a)............................................................................................27

Ninth Circuit Rule 26.1 ...........................................................................................1

INTRODUCTION

Defendant-Appellant Coinbase, Inc. operates a popular cryptocurrency exchange whose users all agree, through the Coinbase User Agreement, to binding arbitration and to delegate any disputes about arbitrability to the arbitrator. The District Court erroneously denied Coinbase's motion to compel arbitration of putative class action claims brought by Plaintiffs-Appellees, all of whom disregarded their arbitration agreements with Coinbase by filing this lawsuit in District Court complaining about Coinbase's 2021 Dogecoin Sweepstakes.

The District Court recognized that "each Plaintiff agreed to the Coinbase User Agreement which indisputably contains an arbitration provision." ER-5. The District Court further recognized that the delegation clause in the parties' arbitration agreement requires an arbitrator, not a judge, to determine all "disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement." ER-12. And the District Court found that "Plaintiffs do not dispute" that their claims in this lawsuit are within the scope of the arbitration agreement. ER-11.

Given these determinations, the only appropriate course of action for the District Court was to grant Coinbase's motion to compel arbitration so that an arbitrator could decide whether Plaintiffs' claims in this lawsuit belong in

arbitration. Instead, the District Court erroneously concluded that the Dogecoin Sweepstakes' Official Rules disrupted the parties' "clear and unmistakable" agreement to delegate to an arbitrator disputes about the "enforceability, revocability, scope, or validity" of their arbitration agreement. The District Court then compounded this error by itself resolving the dispute about "enforceability, revocability, scope, or validity," holding that the claims in this lawsuit are not within the scope of the parties' arbitration agreement, which the District Court viewed as superseded by the Official Rules (it was not).

This Court should reverse and compel arbitration in light of the District Court's two fundamental errors. *First*, despite that the User Agreement's delegation clause clearly and unmistakably commits questions of scope to the arbitrator, the District Court nevertheless reasoned that since the Dogecoin Sweepstakes' Official Rules contain a forum selection clause designating "exclusive jurisdiction" to California state and federal courts, the parties had not evinced "clear and unmistakable" intent to delegate. This was error. Whether a forum selection clause affects the applicability and scope of a concededly agreed-to arbitration provision is precisely the kind of question of "enforceability, revocability, scope, or validity of the Arbitration Agreement" that the User Agreement's clear and unmistakable delegation has reserved for arbitral resolution. The District Court's ruling to the contrary directly conflicts with this Court's holding that a forum selection clause

does not undermine an existing delegation clause's clear and unmistakable delegation of arbitrability to the arbitrator. *See Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1209 (9th Cir. 2016). In such circumstances, any threshold questions concerning the effect of the forum selection clause on the parties' dispute are for the arbitrator to decide in the first instance.

*Second*, in addition to erroneously holding that the forum selection clause allowed the District Court to decide arbitrability itself, the District Court also erred in its determination of arbitrability, concluding that the present dispute does not fall under the User Agreement's arbitration provision because that agreement was superseded by the Sweepstakes' Official Rules. This determination was wrong for multiple reasons. First, the District Court ignored the User Agreement's amendment provision and integration clause, which set out the manner in which the parties may amend, revise, or revoke that Agreement. Nothing in the Official Rules conforms with these terms or evinces the parties' intent to amend, revise, revoke, or supersede the User Agreement. Second, the District Court failed to read the User Agreement and the Official Rules harmoniously, which it could have and should have done, in accord with California's principles of contract law interpretation. This Court has recognized that a forum selection clause (such as that in the Official Rules) can and should be read harmoniously with a binding arbitration provision (such as that in the Coinbase User Agreement), and additionally here, the Official Rules' forum

selection clause may apply to Sweepstakes entrants who are not Coinbase users and therefore never agreed to the User Agreement.

Because the District Court usurped the role of the arbitrator in determining arbitrability—contrary to the parties' User Agreement—and because it erroneously concluded that the parties' underlying dispute was not arbitrable, this Court should reverse the ruling below and order that arbitration be compelled.

## JURISDICTIONAL STATEMENT

This Court has jurisdiction over this timely appeal from the District Court's denial of Coinbase's motion to compel arbitration or stay the proceedings in the alternative under the Federal Arbitration Act. *See* 9 U.S.C. §§ 16(a)(1)(A)-(B).

## STATEMENT OF ISSUES

1. Did the District Court err in denying Coinbase's motion to compel arbitration by refusing to enforce the parties' valid and enforceable delegation clause in its arbitration agreement, which manifests the parties' clear and unmistakable intent to delegate to the arbitrator the resolution of all threshold questions of enforceability, revocability, scope, or validity of the arbitration provision?

2. Even assuming the District Court had authority to decide threshold questions of arbitrability notwithstanding the arbitration agreement's delegation clause, did the District Court err in holding that the claims asserted in the Second

Amended Complaint were not arbitrable?

## BACKGROUND

I. **Factual Background**

A. **Plaintiffs, Like All Users of Coinbase, Agreed to Coinbase's User Agreement and Thus to Binding Arbitration.**

Coinbase operates one of the largest cryptocurrency exchanges in the United States. ER-36, ¶ 1. Coinbase users can purchase, sell, and transact in a myriad of digital currencies, including Dogecoin. *Id.* Coinbase requires all users, including the Plaintiffs-Appellees, to agree to the Coinbase User Agreement, including its binding arbitration agreement, as a condition of using the platform. *See* ER-85–86, ¶¶ 6, 8–9.

Plaintiffs David Suski, Jaimee Martin, Jonas Calsbeek, and Thomas Maher are Coinbase users, each of whom created a Coinbase account before participating in the Dogecoin Sweepstakes. ER-5. The signup process required that each click a checkbox reflecting they agreed to Coinbase's User Agreement, which contains an arbitration provision that delegates any questions of arbitrability to an arbitrator. ER-5–6. The arbitration provision applies to *any* dispute with Coinbase related to plaintiffs' use of the Coinbase Services, and requires such disputes to be finally

settled in binding arbitration on an individual basis. ER-6.[1] Plaintiffs also agreed that the arbitrator, and not a court or judge, would decide threshold questions of arbitrability. *See* ER-12.[2]

The User Agreement each Plaintiff signed also contains an amendment provision that sets out the manner in which the User Agreement may be amended. Specifically, Section 9.5 of the User Agreement states, inter alia, that "[w]e may amend or modify this Agreement by posting on the Coinbase Site or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time," and that "[i]f the revised Agreement includes a material change, we will endeavor to provide you advanced notice via our website and/or email before the material change

---

[1] Martin's, Calsbeek's, and Maher's versions of the User Agreement state that "you and we agree that any dispute arising out of or relating to this Agreement or the Coinbase Services, including, without limitation, federal and state statutory claims, common law claims, and those based in contract, tort, fraud, misrepresentation, or any other legal theory, shall be resolved through binding arbitration, on an individual basis." ER-6. Suski's version states that "you and we agree that any dispute arising under this Agreement shall be finally settled in binding arbitration, on an individual basis." ER-6.

[2] Martin's, Calsbeek's, and Maher's versions of the agreement stated that "[t]his Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration Agreement. All such matters shall be decided by an arbitrator and not by a court or judge." ER-12. Suski's version specified that the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim." ER-12 (quoting Rule 14(a) of the AAA Rules, incorporated in Suski's version of the Agreement)).

becomes effective."[3] The User Agreement also contains an integration clause, which states that the agreement "comprise[s] the entire understanding and agreement between [the user] and Coinbase." ER-103, § 9.4.[4] Each Plaintiff accepted the User Agreement prior to their participation in Coinbase's Dogecoin Sweepstakes. ER-7.

### B. Coinbase's Dogecoin Sweepstakes.

Coinbase's Dogecoin Sweepstakes, held in June 2021, offered participants (not limited to Coinbase registered users) the opportunity to win prizes of up to $1,200,000 in Dogecoin, a popular cryptocurrency. ER-7.[5] To promote the Sweepstakes, Coinbase used direct-to-user emails and digital advertisements on both its web and mobile platforms. ER-37–38, ¶ 7. Coinbase's advertisements for the Sweepstakes stated:

> Trade DOGE. Win DOGE. Starting today, you can trade, send, and receive Dogecoin on Coinbase.com and with the Coinbase Android and iOS apps. To celebrate, we're giving away $1.2 million in Dogecoin. Opt in and then buy or sell $100 in DOGE on Coinbase by 6/10/2021 for your chance to win. Terms and conditions apply.

ER-38–39, ¶ 8. Below that language was a link to "[s]ee all rules and details." *Id.* By clicking on that link and additional links, users were presented with the

---

[3] ER-103, § 9.5. For Suski, that language appears in Section 8.5. *See* ER-95, § 8.5.

[4] For Suski, that language appears in Section 8.4. *See* ER-95, § 8.4.

[5] The Sweepstakes was operated by Defendant Marden-Kane, Inc ("Marden-Kane"). Plaintiffs did not have arbitration agreements with Marden-Kane and thus Marden-Kane did not move to compel arbitration.

Sweepstakes' Official Rules. ER-38–39, ¶ 8; ER-43, ¶ 16.

The Official Rules stated that participants could enter the Sweepstakes using one of "[t]wo methods of entry." ER-124. The first method was to trade Dogecoin on Coinbase's platform. ER-124–125. The second, free method was to mail an index card containing the entrant's contact information. ER-125–126. The Official Rules also stated that entrants did not need to create a Coinbase user account and agree to the Coinbase User Agreement in order to be eligible to participate in the Sweepstakes, but that a participant would need to become a user (and agree to the User Agreement) to claim the prize. *Id.* The Official Rules contained a forum selection clause providing for jurisdiction in "THE CALIFORNIA COURTS (STATE AND FEDERAL)." ER-131.

Each Plaintiff participated in Coinbase's Dogecoin Sweepstakes. ER-5. Each was presented with clear and conspicuous disclosures indicating that they could participate in the Sweepstakes by two methods: (1) opting in and trading Dogecoin on Coinbase or (2) entering for free by mailing an index card with their contact information. ER-8–9. Plaintiffs, who were already Coinbase users who had previously agreed to arbitrate all claims involving Coinbase, chose to enter the Dogecoin Sweepstakes by trading Dogecoin in June 2021 (rather than entering for free by mailing an index card). ER-5. This means each Plaintiff was subject to the Coinbase User Agreement, including the arbitration provision and delegation clause,

when each Plaintiff entered the Dogecoin Sweepstakes.

## II.    Procedural Background

The day after the Sweepstakes entry period ended, Plaintiffs Suski, Martin, Calsbeek, and Maher filed their putative class action complaint on behalf of themselves and other Coinbase users who opted into Coinbase's Sweepstakes, seeking to maintain various California consumer protection claims. ER-5; ER-142 (ECF No. 1, Complaint (filed June 11, 2021)). Plaintiffs seek to represent a class of "all other persons who opted into Coinbase's $1.2 million Dogecoin (DOGE) sweepstakes in June 2021, and who purchased or sold Dogecoins on a Coinbase exchange for a total of $100 or more between June 3, 2021 and June 10, 2021." ER-68, ¶ 80. In other words, the putative class includes only Coinbase users who agreed to the User Agreement, *not* non-user Sweepstakes entrants who entered for free via mailed index card.

The parties consented to proceed before a magistrate judge. ER-143–45 (ECF No. 8; ECF No. 17; ECF No. 37; ECF No. 39). On October 19, 2021, Coinbase filed its Motion to Compel Arbitration, or, in the Alternative, to Dismiss Plaintiffs' Complaint, ER-144 (ECF No. 33). In that motion, Coinbase argued that arbitration should be compelled and the case dismissed or, in the alternative, that because the matter is "referable to arbitration" under the FAA, *see* 9 U.S.C. § 3, the District Court should refer the matter to arbitration and stay its proceedings pending the

arbitrator's determination. Plaintiffs opposed both the argument to compel arbitration and to stay the proceedings while referring their claims to arbitration. ER-145 (ECF No. 40). The District Court held a hearing on the motion to compel arbitration, ER-24, and on January 11, 2022, the District Court denied Coinbase's motion to compel arbitration. ER-11–14.

In denying the motion to compel arbitration, the District Court acknowledged (as did Plaintiffs) that Plaintiffs agreed to Coinbase's User Agreement and that Coinbase's User Agreement contains a valid arbitration agreement. ER-11. The District Court also recognized that the FAA "represents the 'liberal federal policy favoring arbitration agreements' and 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" ER-10 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)). Nevertheless, the District Court denied Coinbase's motion to compel (and refused to allow the arbitrator to determine arbitrability, as required by the User Agreement) based on its determination that the forum selection clause in the Sweepstakes' Official Rules superseded the User Agreement's arbitration provision. ER-13–14. According to the District Court, "[b]ecause the arbitration provision and the forum selection clause conflict, the subsequent contract supersedes the first." ER-13 (citation omitted).[6]

---

[6] The District Court also granted Coinbase's motion to dismiss for failure to state a claim in part, dismissing with leave to amend Plaintiffs' Business and Professions Code Sections 17200 and 17539.15, and Civil Code Section 1750 claims to the

Coinbase timely noticed this appeal of the denial of its motion to compel arbitration pursuant to 9 U.S.C. § 16(a)(1)(A)-(B). ER-136–139. Coinbase then filed a motion to stay the District Court proceedings during the pendency of its appeal, ER-147 (ECF No. 59), which Plaintiffs opposed, ER-148 (ECF No. 67). Notably, at the hearing on the stay motion, the District Court remarked with respect to her denial of the motion to compel arbitration that "there's a reasonable possibility the Ninth Circuit could overturn my decision, [as] I could see a different legal set of minds looking at this factual pattern and saying I was wrong." ER-21, 15:1-4. The District Court described itself as "right on the edge on this motion . . . usually, . . . on the motions to compel, I feel pretty confident. On this one I'm just not sure." ER-21–22, 15:23–16:3. Despite these doubts, the District Court denied Coinbase's motion to stay pending appeal on April 19, 2022. ER-149 (ECF No. 76).

Discovery has already begun; on May 5, 2022, Plaintiffs propounded 23 interrogatories on Coinbase, responses to which are due by June 7. Accordingly, Coinbase will in the coming days file with this Court a motion to stay pending appeal requesting relief by no later than June 1, 2022. Plaintiffs filed their Third Amended Class Action Complaint on May 10, 2022. *See* ER-150 (ECF No. 83).

---

extent they were premised on the theory that the Sweepstakes was an illegal lottery in violation of Penal Code Section 320. The District Court denied Coinbase's motion to dismiss Plaintiffs' claims arising under disclosure and misrepresentation theories.

## STANDARD OF REVIEW

This Court reviews *de novo* an order denying a motion to compel arbitration. *See Mohamed*, 848 F.3d at 1207.

## SUMMARY OF THE ARGUMENT

The District Court erroneously failed to compel arbitration of Plaintiffs' claims, which are subject to binding arbitration under the Coinbase User Agreement. Plaintiffs have never disputed that they agreed to Coinbase's User Agreement, that the User Agreement contains a valid arbitration provision, and that the arbitration provision delegates to an arbitrator the resolution of threshold questions of arbitrability. Despite that the valid delegation clause "clearly and unmistakably" delegates to an arbitrator threshold questions concerning the "enforceability, revocability, scope, or validity of the Arbitration Agreement," *see Mohamed*, 848 F.3d at 1208–09, the District Court erroneously concluded instead that the Official Rules' forum selection clause called into question the parties' intent to delegate questions of arbitrability at all. This was error. The question of whether the Dogecoin Sweepstakes' Official Rules affected the "scope" of the User Agreement's arbitration provision was a straightforward question regarding the "enforceability, revocability, scope, or validity of the Arbitration Agreement." And the User Agreement clearly and unmistakably delegates that question to the arbitrator.

Alternatively, arbitration should be compelled because—contrary to the

District Court's determination—the Official Rules did *not* supersede the User Agreement's arbitration provision concerning Plaintiffs' claims related to the Sweepstakes. The User Agreement has both an integration clause and an amendment provision reflecting a complete agreement between the parties, and the Official Rules nowhere purport to amend, revise, revoke, or supersede that prior agreement. Under California contract law, a subsequent agreement supersedes an earlier agreement only when it expressly serves as the parties' "exclusive embodiment" of their agreement. No such evidence exists here, and none of the cases cited by the District Court suggest otherwise. Moreover, even if the Official Rules were interpreted to have amended the User Agreement in some capacity, the two agreements can and should be read harmoniously under California law principles of contract interpretation. Where, as here, a later-enacted forum selection clause does not expressly disclaim any earlier-established right or requirement to arbitrate, courts have interpreted such clauses narrowly, covering only such claims that would fall outside the agreement to arbitrate. Here, such a harmonious interpretation means that the User Agreement's arbitration provision stands as to Coinbase users like Plaintiffs.

This Court should reverse the District Court and compel arbitration.

ARGUMENT

## I. Arbitration Should Be Compelled Because the Coinbase User Agreement Requires Arbitration And Delegates Arbitrability To The Arbitrator.

The District Court erred in refusing to enforce the User Agreement's valid delegation clause, which requires an arbitrator, not the District Court, to resolve threshold questions of arbitrability. Valid arbitration agreements, including delegation clauses, must be liberally construed and enforced in federal court pursuant to the Federal Arbitration Act ("FAA"). 9 U.S.C. § 2; *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 529 (2019); *id.* at 527 (recognizing that the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes" (citations omitted)).

When considering a motion to compel arbitration, a court must consider "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (citation omitted). Threshold issues of arbitrability—that is, "the validity or application of any of the provisions of the arbitration clause"—can be delegated to an arbitrator where the parties "clearly and unmistakably" so provide. *Momot v. Mastro*, 652 F.3d 982, 987-88 (9th Cir. 2011) (citation omitted). Where, as here, a contract delegates the question of arbitrability to the arbitrator, "courts must respect the parties' decision as embodied in the contract" and "may not decide the

14

arbitrability issue." *Henry Schein*, 139 S. Ct. at 528, 530.

## A. Plaintiffs Do Not Dispute That The User Agreement Contains A Valid Arbitration Agreement.

Here, as the District Court recognized, it is undisputed that "Plaintiffs agreed to Coinbase's User Agreement" and that "Coinbase's User Agreement contains a valid arbitration agreement." ER-11. Plaintiffs do not dispute the validity of that Agreement. To the contrary, setting aside the question whether the Official Rules created a carve-out from the User Agreement, Plaintiffs concede that the User Agreement, including its delegation clause, is "valid and enforceable." ER-27.

## B. The User Agreement "Clearly and Unmistakably" Delegates Questions of Arbitrability to the Arbitrator.

As the District Court further recognized, and as is undisputed, under the User Agreement, "disagreements over the scope of the arbitration provisions were delegated to the arbitrator," not a judge. ER-12 (the "arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement or to the arbitrability of any claim or counterclaim" (quoting Rule 14(a) of the AAA Rules, incorporated in Suski's version of the Agreement)); ER-12 ("This Arbitration Agreement includes, without limitation, disputes arising out of or related to the interpretation or application of the Arbitration Agreement, including the enforceability, revocability, scope, or validity of the Arbitration Agreement or any portion of the Arbitration

Agreement. All such matters shall be decided by an arbitrator and not by a court or judge." (quoting Martin's, Calsbeek's, and Maher's versions of the agreement)).

An agreement delegating to the arbitrator "the authority to determine 'the validity or application of any of the provisions of' the arbitration clause[ ] constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement.'" *Momot*, 652 F.3d at 988 (quoting *Rent–A–Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 68 (2010)). Courts look to the language of the delegation clause for "clear and unmistakable" evidence of the parties' intent to delegate questions of arbitrability. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 945 (1995). Here, the language of the delegation clause in Plaintiffs' User Agreements could not be clearer or more unmistakable: all questions of arbitrability are for the arbitrator. *See* ER-12.

**C.    The Forum Selection Clause In The Official Rules Does Not Disturb The User Agreement's "Clear And Unmistakable" Delegation Of Scope Disputes To An Arbitrator.**

Despite recognizing the validity of the delegation clause in the User Agreement and its "clear and unmistakable" delegation to the arbitrator, the District Court nevertheless refused to enforce the parties' agreement to delegate threshold questions of arbitrability to the arbitrator. Rather, the District Court determined that the forum selection clause in the Sweepstakes' Official Rules undermined the parties' "clear and unmistakable" intent to delegate. ER-12–13. This was error under this Court's precedent, which provides that a "clear and unmistakable" delegation

16

clause in an arbitration agreement, as here, must be enforced—even where a forum selection clause to which the parties also agreed provides for judicial resolution.

Specifically, in *Mohamed v. Uber Technologies, Inc.*, this Court concluded that a delegation clause in the parties' arbitration agreement served as "clear and unmistakable" evidence of the parties' intent to delegate, even though the parties' agreement also contained a forum selection clause granting "exclusive jurisdiction" to state and federal courts in San Francisco over "any disputes, actions, claims or causes of action arising out of or in connection with this Agreement." 848 F.3d at 1209 (citation omitted). This Court concluded that any apparent conflict between the parties' delegation and forum selection clauses was "artificial," since judicial remedies may always be necessary to enforce an arbitral decision, and because the forum selection clause identified "venue for any other claims that were not covered by the arbitration agreement." *Id.* (citing *Dream Theater, Inc. v. Dream Theater*, 124 Cal. App. 4th 547, 556 (2004)). Likewise here, any apparent conflict between the arbitration provision in the User Agreement and the forum selection clause in the Official Rules is "artificial," because the forum selection clause—which does not refer to or purport to revoke the arbitration provision—simply identifies "venue for any other claims that were not covered by the arbitration agreement." *Mohamed*, 848 F.3d at 1209. If anything, any purported conflict in this case is even more "artificial" than in *Mohamed* because the User Agreement—which contains the delegation

clause but no forum selection clause—indisputably reflects the complete agreement between the parties.

Following *Mohamed*, district courts in this circuit have regularly concluded that delegation clauses in arbitration agreements provide "clear and unmistakable" evidence of intent to delegate questions of arbitrability to the arbitrator even where the parties also agreed to forum selection clauses or other terms expressly contemplating the possibility of judicial relief. *See, e.g.*, *Dillion v. BET Info. Sys., Inc.*, No. 18-cv-04717-JST, 2019 WL 12338059, at *4 (N.D. Cal. Feb. 19, 2019) (delegation clause constituted "clear and unmistakable" evidence to delegate notwithstanding provision in same agreement providing exclusive jurisdiction to Delaware state and federal courts); *Jacksen v. Chapman Scottsdale Autoplex*, LLC, No. CV-21-00087-PHX-DGC, 2021 WL 3410912, at *3 (D. Ariz. July 21, 2021) (enforcing delegation clause, notwithstanding severability clause referencing potential court review of class action waiver); *Taylor v. Shutterfly, Inc.*, No. 18-cv-00266-BLF, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) (enforcing delegation clause, notwithstanding severability clause contemplating judicial determination of unenforceability); *see also Davis v. Einstein Noah Rest. Grp., Inc.*, No. 19-cv-00771-JSW, 2019 WL 6835717, at *3 & n.1 (N.D. Cal. Oct. 23, 2019) (delegation clause "clear and unmistakable" evidence of delegation to arbitrator even with respect to questions of whether agreement applied to pre-agreement claims).

The only authority cited by the District Court for refusing to enforce the delegation clause was *Ingram Micro Inc. v. Signeo Int'l, Ltd.*, No. SACV 13–1934–DOC (ANx), 2014 WL 3721197, at \*3 (C.D. Cal. July 22, 2014), which predates *Mohamed* and is factually distinguishable. *See* ER-12. The District Court stated, quoting *Ingram*, that "the required 'clear and unmistakable evidence of intent to arbitrate arbitrability does not exist where an arbitration provision has been excluded from superseding agreements.'" *Id. Ingram*, in turn, cited out-of-circuit caselaw that, unlike *Mohamed*, did not pertain to a competing forum selection clause or acknowledge, as does relevant precedent from this Court, that a conflict between arbitration and forum selection clauses can be "artificial" as such clauses can and should be read harmoniously. *Mohamed*, 848 F.3d at 1209; *see Ingram*, 2014 WL 3721197, at \*3. Rather, in *Ingram*, the parties' new agreements, on the exact same issues, contained a merger clause reflecting the parties' express intent to entirely supersede their earlier agreement to arbitrate, as well as a provision releasing all claims between the parties arising from their business relationship up to that date. *See id.* Put simply, *Ingram* does not support disregarding the delegation clause in the concededly valid User Agreement simply because the parties also agreed to a forum selection clause elsewhere. In these circumstances, pursuant to *Mohamed*, it is for the arbitrator to decide what effect, if any, the Official Rules have on the scope of

the parties' agreement to arbitrate under the User Agreement.[7]

### D. Under The Delegation Clause, The Arbitrator Must Determine Whether Plaintiffs' Claims Are Within The Scope of the Parties' Arbitration Agreement.

Because the Official Rules did not disturb the User Agreement's delegation clause, and given the agreement "clearly and unmistakably" delegates questions of the arbitration agreement's "enforceability, revocability, scope, or validity" to the arbitrator, the parties' dispute about whether Plaintiffs' claims in this lawsuit fall within the scope of the arbitration agreement must be resolved by the arbitrator. Where, as here, the parties have agreed to a valid arbitration agreement with a delegation clause, any disputes about the scope of arbitrability must be adjudicated by the arbitrator in the first instance. *See Aceves v. Autonation, Inc.*, 317 F. App'x 665, 666 (9th Cir. 2009) (delegation clause assigns questions of "scope" and "validity" to the arbitrator); *Davis*, 2019 WL 6835717, at *2 ("delegation clause's explicit reference to 'the scope of arbitrability' encapsulates questions of whether the Agreement might apply to claims that accrued prior to the execution of the

---

[7] Although the District Court did not expressly rely on *Goldman, Sachs & Co. v. City of Reno*, 747 F.3d 733, 738 (9th Cir. 2014), in its reasoning to disregard the delegation clause in the User Agreement, the District Court cited *Goldman* for the "clear and unmistakable standard," ER-11, and below Plaintiffs cited *Goldman* as a basis for disregarding the delegation clause, ER-30–32. But *Goldman* does not support disregarding the delegation clause here, because in that case—unlike here— the agreement with the delegation clause did not itself provide "clear and unmistakable" evidence of an intent to delegate. 747 F.3d at 739.

Agreement" (citations omitted)). Allowing the arbitrator to determine scope in the face of a delegation clause is required "even if the court thinks that the argument that the arbitration agreement applies to a particular dispute is wholly groundless." *Henry Schein*, 139 S. Ct. at 529.

Accordingly, the District Court should have granted Coinbase's motion to compel arbitration so that an arbitrator could decide in the first instance whether Plaintiffs' claims are within the scope of the User Agreement's binding arbitration provision. If an arbitrator were to conclude that any or all of Plaintiffs' underlying claims are subject to arbitration, then those claims would be decided by an arbitrator. And if an arbitrator were to conclude that any or all of Plaintiffs' underlying claims are not subject to arbitration for any reason, including a misunderstanding as to the applicability of the Official Rules' forum selection clause, then those claims would be returned to federal court. But these are scope questions for the arbitrator to decide.

Notably Plaintiffs do not dispute that their claims are within the scope of the User Agreement's arbitration provision. ER-11 (absent their arguments based on the Official Rules, "Plaintiffs also do not dispute that their claims would fall within the scope of Coinbase's User Agreement arbitration provision"). Nor could they: The arbitration provision in Plaintiffs' User Agreements broadly applies to *any* dispute between a Coinbase user and Coinbase that is related to Coinbase or its services. *See* ER-93, § 7.2 (Suski's version of the arbitration agreement, applying to any "dispute

with Coinbase"); ER-100, § 8.3; ER-108, § 8.3; ER-116, § 8.3 (remaining Plaintiffs' versions of the arbitration agreement, applying to "any dispute arising out of or relating to this Agreement or the Coinbase Services").

\*\*\*

The District Court refused to enforce the parties' clear and unmistakable agreement in the User Agreement to delegate questions of arbitrability to the arbitrator. In doing so, the District Court erred. Arbitration should be compelled.

## II. Even If The District Court Had Authority To Decide Arbitrability, Arbitration Should Be Compelled Because This Dispute Is Within The Scope Of The Parties' Arbitration Agreement.

As explained in Section I, the User Agreement's delegation clause is dispositive of this appeal and compels arbitration. Alternatively, however, arbitration should be compelled because this dispute is within the scope of the parties' arbitration agreement, which was not—contrary to the District Court's conclusion—superseded by the forum selection clause in the Official Rules.

First, the User Agreement agreed to by each Plaintiff contains both an amendment provision and an integration clause, but the Official Rules do not purport to amend or supersede the User Agreement. Under California law, a subsequent agreement supersedes an earlier agreement only when it expressly serves as the parties' "exclusive embodiment" of their agreement. There is no evidence that the Official Rules are such an embodiment, and none of the cases cited by the District

22

Court support its supersession holding. Moreover, even if the Official Rules can be read to have amended the User Agreement in part, the agreements can and should be read harmoniously, such that Plaintiffs' claims—as Coinbase users who have agreed to the User Agreement—are subject to arbitration.

### A. The User Agreement Is Fully Integrated And The Official Rules Did Not Trigger The User Agreement's Amendment Provision.

The District Court inexplicably—and erroneously—ignored the text of the User Agreement in concluding that it was superseded by the Official Rules. ER-13–14. But the User Agreement contains an integration clause stating that the Agreement "comprise[s] the entire understanding and agreement between [the user] and Coinbase." ER-103, § 9.4; ER-111, § 9.4; ER-119, § 9.4.[8] The User Agreement further provides that "[w]e may amend or modify this Agreement by posting on the Coinbase Site or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time" and "[i]f the revised Agreement includes a material change, we will endeavor to provide you advanced notice via our website and/or email before the material change becomes effective."[9] Plaintiffs do not allege that

---

[8] For Suski, that language appears in Section 8.4. *See* ER-95, § 8.4.

[9] ER-103, § 9.5 (agreement of Martin); ER-111, § 9.5 (agreement of Calsbeek). For Suski, that language, in materially similar form, appears in Section 8.5. *See* ER-95, § 8.5. Maher's version of the clause is substantially similar. *See* ER-119, § 9.5 ("We may amend or modify this Agreement by posting on the Coinbase Site or emailing to you the revised Agreement, and the revised Agreement shall be effective at such time. . . . If the revised Agreement includes a material change, we will endeavor to

Coinbase followed the procedure for amending the User Agreement. And nowhere do the Official Rules evince the parties' intent to amend, revise, revoke, or supersede *any* prior agreement, including the User Agreement.

California contract law principles do not support the District Court's conclusion that the Official Rules (and their forum selection clause) amended and supplanted the User Agreement (and its arbitration provision). Rather, when faced with a contract containing an arbitration provision, courts interpret the contract "by applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049 (9th Cir. 1996) (citations omitted). And under California law, "an agreement is integrated, and thereby supersedes any prior oral or written agreements between the parties, if 'the parties intended their writing to serve as the *exclusive* embodiment of their agreement.'" *Garcia v. ISS Facility Servs., Inc.*, 855 F. App'x 338, 339 (9th Cir. 2021) (quoting *Masterson v. Sine*, 68 Cal. 2d 222, 225 (1968)) (emphasis added). Any "collateral agreement itself must be examined . . . to determine whether the parties intended the subjects of negotiation it deals with to be included in, excluded from, or otherwise affected by the writing." *Masterson*, 68

provide you advanced notice via our website and/or email before the material change becomes effective.").

Cal. 2d at 226; *see also Stiner v. Brookdale Senior Living, Inc.*, 810 F. App'x 531, 533–34 (9th Cir. 2020) (looking to whether subsequent agreement contains a "complete agreement" provision reflecting intent to supersede an earlier agreement); *Kanno v. Marwit Cap. Partners II, L.P.*, 18 Cal. App. 5th 987, 1000 (2017) (noting California law instructs courts to look for contract terms evincing the parties' "final expression" or "complete and exclusive statement" in finding evidence of integration (quoting Cal. Civ. Proc. Code § 1856(b)).

Under this controlling law, the Official Rules did not and could not amend the integrated User Agreement. Yet the District Court made no effort to inquire into whether the Official Rules evince any intent by the parties to amend, revise, revoke, or supersede any part of the User Agreement, let alone supplant the arbitration provision and its delegation of threshold questions concerning the scope of arbitrability. Rather, the District Court simply concluded that the Official Rules' forum selection provision and the User Agreement's arbitration provision were, in the abstract, "conflicting." ER-13. This was error. [10] The Official Rules do not amend or supplant the User Agreement: they do not follow the procedures required by the integrated User Agreement for amendment, and, indeed, the Official Rules are silent

---

[10] In additional to being insufficient to amend the User Agreement, the alleged "conflict" cited by the District Court has been recognized by this Court as "artificial." *Mohamed*, 848 F.3d at 1209.

as to any prior agreement. The Official Rules also do not "deal[] with the same subject matter" as the User Agreement, given that the User Agreement governs the user's entire relationship with Coinbase. ER-14 (quoting *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1004 n.1 (N.D. Cal. 2015).[11] In contrast, the Official Rules pertain only to "controversies regarding the promotion." ER-9. Thus, under contract law principles, the Official Rules could not and did not amend or supplant the parties' arbitration agreement in the User Agreement.

The District Court erroneously reached the opposite conclusion by relying on inapposite cases, *see* ER-13–14, each of which concerned a later contract whose text evinced the intent to modify or supersede the entirety of the earlier agreement. In each case, either the parties' first contractual relationship included a forum selection clause designating a state and/or federal court forum *from the outset*, or the later agreement contained a merger clause that evinced the parties' intent for the later agreement to merge with, and supersede, the earlier one. Not one case concerned a dispute where, as here, the parties entered into two distinct and unrelated agreements, in which the earlier agreement contained valid delegation and arbitration clauses and purported to be a complete agreement between the parties, and the later agreement touched on a narrower range of ancillary matters between the parties, with no merger or integration clause.

---

[11] *See infra* note 12.

First, the District Court's reliance on *Goldman*, 747 F.3d at 739, was in error. The District Court cited *Goldman* as support for its erroneous conclusion that because the arbitration provision and the forum selection clause conflict, the forum selection clause supersedes the arbitration provision. ER-13. But *Goldman* provides no support for that conclusion. *Goldman* concerned an arbitration provision in a Financial Industry Regulatory Authority ("FINRA") Rule, which provided that any "customer" of a FINRA-regulated entity (such as the Plaintiff) could bring certain claims in FINRA arbitration, including, Plaintiff contended, on the issue of arbitrability itself. *Goldman*, 747 F.3d at 738–39. This Court reached the question of supersession only after first concluding that FINRA Rule 12203(a)—which enabled the FINRA director to decline use of a FINRA arbitration forum in certain circumstances—was *not* itself "clear and unmistakable" evidence of FINRA members' intent to delegate questions of arbitrability to arbitral resolution. *Id.* at 739. Here, by contrast, from the outset the parties agreed to a delegation clause in the User Agreement that "clearly and unmistakably" delegates questions of arbitrability to an arbitrator.

*Goldman* is further inapt here because in that case, the FINRA rules operated as default rules against which FINRA members were "free to make alternative arrangements with each individual customer when the parties formed . . . their contractual relationship." *Id.* at 741. The *Goldman* parties did just that—executing

27

an agreement that included a forum selection clause and a merger clause stating that the agreement "contain[ed] the entire agreement between the parties." *Id.* at 747. On *this basis*, this Court concluded that "*from the beginning of this relationship*, Goldman and Reno agreed to bring such claims in the District of Nevada," and "the parties never agreed to arbitrate claims arising out of their contractual relationship." *Id.* at 741 (emphasis added). Here, by contrast, "from the beginning of this relationship," Plaintiffs and Coinbase indisputably agreed in the User Agreement to submit disputes between them to an arbitrator and to delegate to an arbitrator threshold questions concerning the scope of arbitrability.

Second, the District Court's invocation of out-of-circuit law in *Applied Energetics, Inc. v. NewOak Cap. Markets, LLC*, 645 F.3d 522, 525 (2d Cir. 2011), is similarly off point. The District Court erroneously relied on that case in stating that neither the User Agreement's arbitration provision nor the Official Rules' forum selection clause "admits the possibility of the other." ER-13 (quoting *Applied Energetics*, 645 F.3d at 525). Not only is that holding contrary to this Court's decision in *Mohamed*, but the agreements here are in no way analogous to those in *Applied Energetics.* In that case, the Engagement Agreement signed by the parties— which contained an arbitration clause—"specifically contemplated that the parties would enter into a subsequent, more formal agreement," which, "though embodying much of the substance of the Engagement Agreement, omitted any reference to

arbitration." 645 F.3d at 523. As in *Goldman*, the subsequent agreement in *Applied Energetics* also contained a merger clause, providing that several other documents and agreements—but *not* the earlier Engagement Agreement—"constitute the entire understanding and agreement between the parties." *Id.* at 523–24. By contrast, here the Sweepstakes' Official Rules lack a merger clause, any reference to the User Agreement, or any other indicia of the parties' intent to displace the User Agreement and its arbitration provision.[12]

In short, while the parties in *Goldman* and *Applied Energetics* "intended their [subsequent] writing to serve as the exclusive embodiment of their agreement," *Masterson*, 68 Cal. 2d at 225, the Official Rules lack a merger clause, an integration clause, or any other evidence that the parties intended to amend, revoke, or supersede any part of the User Agreement. Therefore, under California contract law, the Official Rules cannot constitute the "exclusive embodiment" of the parties' agreement, and so do not supersede the User Agreement. The District Court erred in concluding otherwise.

---

[12] *Capili v. Finish Line, Inc.*, 116 F. Supp. 3d 1000, 1009 (N.D. Cal. 2015), *aff'd*, 699 F. App'x 620 (9th Cir. 2017), similarly does not support the District Court's determination that the Official Rules supplant the User Agreement. The District Court relied on a footnote in *Capili* that determined, with respect to two contracts executed two weeks apart, that the latter prevails if the same subject matter is at issue. *Capili*, 116 F. Supp. 3d at 1004 n.1 (citing 17A C.J.S. Contracts § 574). But unlike in *Capili*, the User Agreement and the Official Rules do not "deal with the same subject matter" and were not executed near-contemporaneously.

### B. Even If The Official Rules Amended The User Agreement, The Agreements Can And Should Be Read Harmoniously, Requiring Arbitration Of Claims By Coinbase Users Like Plaintiffs.

Even if the Official Rules amended the User Agreement in part, the User Agreement and Official Rules can and should be read harmoniously, including to give broad effect to the arbitration provision in the User Agreement to the extent possible. As explained below, reading the arbitration provision in the User Agreement to apply to Coinbase users like Plaintiffs for disputes pertaining to the Sweepstakes can be harmonized with the forum selection clause in the Official Rules. The District Court therefore erred in rejecting that harmonious reading.

This Circuit has instructed that when interpreting contracts, provisions should be read "so that they harmonize with each other, not contradict each other." *Peterson v. Minidoka Cnty. Sch. Dist. No. 331*, 118 F.3d 1351, 1359 (9th Cir. 1997), *amended*, 132 F.3d 1258 (9th Cir. 1997); *see also Vital Pharms., Inc. v. Orange Bang, Inc.*, No. CV 20-1464 DSF (SHK), 2020 WL 12676307, at *4 (C.D. Cal. Nov. 30, 2020) (reading successor clause in harmony with arbitration clause to require arbitration of successor's claims). This accords with principles of contract interpretation under California law, which call for a contract to receive an interpretation that will make it operative and capable of being carried into effect. *See* Cal. Civ. Code § 1643; *see also Gen. Precision, Inc. v. Int'l Ass'n of Machinists*, 241 Cal. App. 2d 744, 747 (1966) (explaining that the "arbitrator was under a duty to interpret, harmonize, and

apply the various provisions of the contract . . . in order to give the contract meaning as an effective instrument").

This is especially true where, as here, a "broad arbitration clause" governs the relationship between the parties. *See Pers. Sec. & Safety Sys. Inc. v. Motorola Inc.*, 297 F.3d 388, 393 (5th Cir. 2002) (where arbitration provision "purports to cover all disputes 'related to' or 'connected with' the agreement, we have held that the provision is 'not limited to claims that literally "arise under the contract," but rather embrace[s] all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute'" (citations omitted)); *Pennzoil Expl. & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1067 (5th Cir. 1998) ("Furthermore, courts distinguish 'narrow' arbitration clauses that only require arbitration of disputes 'arising out of' the contract from broad arbitration clauses governing disputes that 'relate to' or 'are connected with' the contract." (citations omitted)).

### 1. Forum Selection Clauses Like That In The Official Rules Are Not Inconsistent With Arbitration Provisions Because They Apply Only To Non-Arbitrable Claims.

The arbitration provision in the User Agreement and the forum selection clause in the Sweepstakes' Official Rules can be harmoniously read because the forum selection clause applies only to non-arbitrable claims. Courts faced with such provisions that, at first blush, appear to be conflicting, have recognized that any

conflict is in fact "artificial." *Mohamed*, 848 F.3d at 1209. This is so because a forum selection clause in the same or a related agreement may apply only to a subset of potential disputes that fall outside the primary agreement to arbitrate. *See, e.g.*, *id.*; *Bank Julius Baer & Co. v. Waxfield Ltd.*, 424 F.3d 278, 284 (2d Cir. 2005) (merger and forum selection clause in subsequent agreement cannot supersede or nullify earlier agreements with arbitration clause "unless the forum selection clause specifically precludes arbitration" (citation omitted)); *Pers. Sec. & Safety Sys.*, 297 F.3d at 395 (interpreting forum selection clause "in the context of the entire contractual arrangement," including arbitration agreement, and giving full "effect to all of the terms of that arrangement" (citation omitted)); *Patten Sec. Corp. v. Diamond Greyhound & Genetics, Inc.*, 819 F.2d 400, 407 (3d Cir. 1987) (concluding forum selection clause in later agreement did not preclude arbitration arising under binding rules because any reference to arbitration was "conspicuously absent from" forum selection clause); *Herkenrath v. Move, Inc.*, No. CV 18-4438-MWF (KSx), 2018 WL 10705782, at *6 (C.D. Cal. Aug. 21, 2018) (citing *Goldman* for proposition that forum selection clause conflicts only where parties explicitly "disclaim[] any right" to arbitration by agreeing that "all actions and proceedings" shall be brought in federal court). In such cases, courts have recognized that forum selection clauses may, for example, designate a forum for judicial enforcement of arbitral awards, or provide for the adjudication of some subset of claims falling

outside the coverage of the arbitration provision.

> ### 2. The User Agreement and the Official Rules Can Be Read Harmoniously.

Additionally, there is no conflict between the User Agreement and the Sweepstakes' Official Rules, and the two agreements can be read harmoniously, because the integrated User Agreement applies to Coinbase users and specifies an arbitral forum, whereas the Official Rules' forum selection clause designates a specific judicial forum for any claims raised by *non*-users of Coinbase related to the Sweepstakes. Specifically, the Official Rules apply to Dogecoin Sweepstakes participants who never agreed to the User Agreement. Thus, if a participant entered by mailing a card and never created a Coinbase account (and thus never agreed to the User Agreement), then the participant would not have an arbitration agreement with Coinbase, and disputes between that participant and Coinbase arising from the Sweepstakes would need a venue to be resolved—California state or federal court per the Official Rules. Likewise, if a visitor who was not a Coinbase user viewed Coinbase's marketing materials but never participated in the Sweepstakes, then that visitor also would not be subject to the arbitration agreement with Coinbase. This is so because it is only upon creating a Coinbase user account and consenting to the User Agreement that an individual agrees to abide by the terms of the User Agreement—including the provision that requires arbitration of disputes arising out of the participant's use of Coinbase's services, such as trading Dogecoin to

participate in the Sweepstakes.

Importantly, Plaintiffs are all Coinbase users and seek to represent a class of *only* Coinbase users. In their opposition to Coinbase's motion to compel arbitration, Plaintiffs themselves differentiated Sweepstakes entrants who entered by using the Coinbase platform to trade in Dogecoin from mail-in entrants. *See* ER-33 (distinguishing "between mail-in 'entrants' and other entrants"). Thus, the line between user and non-user claims is concededly relevant, sensible, and further allows the User Agreement and the Official Rules to be read harmoniously—as was the District Court's obligation, but as it failed to do.

In addition, the User Agreement and Official Rules can be read harmoniously to provide a specific forum for the enforcement of arbitral awards related to the Sweepstakes. The User Agreement to which Plaintiffs consented provides that any "arbitral decision may be enforced in *any* court,"[13] and the forum selection clause in the Official Rules specifies the venue of state and California courts. These provisions can thus read harmoniously as providing a "venue provision" for enforcement of any such awards, as well as specifying "the jurisdiction of a court to obtain [any] other remedies." *Mohamed*, 848 F.3d at 1209 (quoting *Dream Theater*, 124 Cal. App. 4th at 556)).

---

[13] *See* ER-93, § 7.2 (Suski's version of the arbitration agreement) (emphasis added); ER-101, § 8.3; ER-109, § 8.3; ER-117, § 8.3 (the remaining Plaintiffs' versions) (emphasis added).

**CONCLUSION**

The District Court erred by failing to enforce the parties' arbitration agreement, which clearly and unmistakably delegated questions of arbitrability to the arbitrator. Alternatively, the District Court should have compelled arbitration because this dispute is within the scope of the parties' arbitration agreement. This Court should reverse the decision below and order that arbitration be compelled.

Dated: May 11, 2022            COOLEY LLP
MICHAEL G. RHODES
TRAVIS LEBLANC
KATHLEEN HARTNETT
JOSEPH D. MORNIN
DAVID S. LOUK

By: */s/ Michael G. Rhodes*
      Michael G. Rhodes

Attorneys for Appellant
Coinbase, Inc.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)**  | 22-15209

The undersigned attorney or self-represented party states the following:

◉  I am unaware of any related cases currently pending in this court.

○  I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

○  I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature**  | /s/ Michael G. Rhodes     **Date**  | May 11, 2022

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 17**                                    *New 12/01/2018*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* *http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** | 22-15209

I am the attorney or self-represented party.

**This brief contains** | 8,222 | **words**, excluding the items exempted

by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R.

App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

○ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

○ is an **amicus** brief and complies with the word limit of Fed. R. App. P.
29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

○ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

○ complies with the longer length limit permitted by Cir. R. 32-2(b) because
*(select only one):*

    ○ it is a joint brief submitted by separately represented parties;

    ○ a party or parties are filing a single brief in response to multiple briefs; or

    ○ a party or parties are filing a single brief in response to a longer joint brief.

○ complies with the length limit designated by court order dated [    ].

○ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ Michael G. Rhodes    **Date** | May 11, 2022

*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* *forms@ca9.uscourts.gov*

**Form 8**      *Rev. 12/01/2018*

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing **Opening Brief for Appellant Coinbase, Inc.,** with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on May 11, 2022.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: May 11, 2022

*/s/ Michael G. Rhodes*

Michael G. Rhodes